**R.L. JEFFRIES TRUCKING COMPANY, INC. Appellant (Defendant Below),**

v.

**Jerry Lee CAIN, Appellee (Plaintiff Below).**

No. 93A02–8903–EX–91.

Court of Appeals of Indiana, First District.

Oct. 24, 1989.

George A. Porch, Bamberger, Foreman, Oswald and Hahn, Daniel F. Hewins, Hewins & Hewins, Evansville, for appellant.

Robert C. Rupp, Indianapolis, for appellee.

ROBERTSON, Judge.

Appellant-defendant R.L. Jeffries Trucking Company (Jeffries) appeals from the Industrial Board's granting appellee-plaintiff Jerry Lee Cain a workmen's compensation award for permanent partial impairment and for permanent total disability.

We affirm.

Cain and his wife, Glenda, entered into an agreement with Jeffries to drive a tractor-trailer rig leased to Jeffries by Simoni, a trucking business out of Georgia. Cain and Glenda were to haul and deliver a load

of conduit from Evansville to Miami. Both were cleared to drive the truck by Jeffries. On December 26, 1977, during a descent down a mountain at Monteagle, Tennessee, the truck, with Glenda driving, crashed. Glenda was killed. Cain, who had been sleeping in the sleeper, survived with severe injuries, including traumatic amputation of the left leg at the hip. He also suffered a collapsed lung, fractures to the left femur and right ankle, an avulsion of the right testicle, and various other fractures.

Within two months of the accident, Jeffries' insurance carrier and Cain had entered into a Form 12 agreement which was filed and approved by the Industrial Board on February 15, 1978. Jeffries' insurance carrier paid Cain temporary total disability until December 7, 1981. Payment of Cain's medical expenses was discontinued in December, 1982. Cain filed a Form 14 with the Industrial Board on February 7, 1983 alleging his permanent and total disability and permanent partial impairment. In its motion to dismiss Cain's petition, Jeffries raised a statute of limitations defense, claiming Cain's Form 14 was filed more than two years from the date of the accident. This motion was denied by a single hearing member. After a hearing of the full board, the board dismissed Jeffries' appeal from the decision of the single hearing member.

Cain filed a petition for bad faith attorney fees on June 12, 1985. In early 1986, Jeffries' insurance carrier became insolvent. Original counsel for Jeffries withdrew his appearance and the Kentucky Insurance Guaranty Association entered its appearance for Jeffries on March 24, 1986. Thereafter, Jeffries filed special defenses of statute of limitations and violation of a work rule. At a hearing on the merits, Jeffries successfully tried the issue of whether Cain was an employee of Jeffries. After the hearing on the merits before a single hearing member, the member adopted stipulations of fact and made findings. The parties had stipulated that Cain had been involved in the truck accident, and that the carrier had paid Cain certain temporary total disability payments and medical expenses. The hearing member made the following findings:

1. On December 26, 1977, Plaintiff sustained severe personal injuries resulting from a single tractor-trailer accident at Monteagle, Tennessee.

2. On February 15, 1978, the Industrial Board of Indiana approved a Form 12 Agreement Between Employee and Employer As to Compensation in which Plaintiff is identified as "Employee" and Defendant is identified as "Employer."

3. The filing of a Form 12 Agreement constitutes an Award under the Indiana Workmen's Compensation Act and is binding upon the employer and employee.

4. Plaintiff's injuries arose out of and in the course of Plaintiff's employment with Defendant.

5. The compensation insurance carrier for Defendant accepted the claim of Plaintiff as compensable and paid substantial benefits to Plaintiff for temporary total disability and to providers of medical services for their treatment of Plaintiff.

6. Defendant informed the adjuster for the compensation insurance carrier of the claim of Plaintiff for compensation at the outset.

7. As agents of Defendant, the compensation insurance carrier and its adjuster determined Plaintiff's claim to be compensable.

8. The Form 24, Employer's Report to Industrial Board of Injury to Employee, was prepared by Defendant on December 27, 1977 and indicated that Plaintiff had been employed by Defendant on December 7, 1977.

9. The Defendant is bound by its own acts and the acts of its agents and employees and should be estopped from now raising the issue of Plaintiff's status as an employee.

10. Defendant only raised the issue of Plaintiff's status as an employee after Defendant's Workmen's Compensation insurance carrier went into receivership and it became apparent that Defendant

could incur some liability for Workmen's Compensation benefits to Plaintiff.

11. A prior Award of a Single Hearing Member denied Defendant's Motion to Dismiss Plaintiff's Form 14 on the issue of the two-year statute of limitations after submission of arguments by Briefs and that issue may not now be relitigated.

12. Plaintiff was sleeping in the sleeper portion of the cab of the tractor and his wife was driving the tractor when it crossed the sunken median of I–24 at Monteagle, Tennessee on the downgrade and left the roadway on the left-hand side.

13. Plaintiff's wife was killed in the accident and the tractor was a total loss.

14. As a result of said accident, Plaintiff's left leg was amputated above the hip joint and he sustained a collapsed left lung, concussion, depressed facial skull fractures, avulsion of the right testicle, a fractured right elbow, an open fracture dislocation of the right ankle with the lateral ligaments and anterior ligaments of the ankle joint having been torn out, a broken bone in the right foot and multiple minor contusions and lacerations.

15. Plaintiff underwent a fusion of his right ankle.

16. Plaintiff's right ankle cannot support his weight.

17. Plaintiff also underwent extensive exploratory abdominal surgery and facial constructive surgery.

18. Plaintiff's lymph nodes at the site of the amputation have also been surgically removed.

19. Plaintiff has developed neuromas on his amputation site scar tissue which have been surgically removed.

20. Plaintiff has severe recurring muscle spasms which are initiated in his gluteus maximus and medius muscles on his left side, which muscles would normally be attached to his femur but due to the amputation are unattached.

21. The muscle spasms, if uncontrolled, spread into Plaintiff's back, neck and head.

22. During spasm, Plaintiff has had knots, up to nine at one time, pop out of the muscle tissue.

23. Plaintiff attempts to control the onset of muscle spasms through oral medication.

24. When Plaintiff's spasms cannot be controlled by oral medication, he requires intramuscular injections or intravenous treatment.

25. Plaintiff has been hospitalized on numerous occasions for treatment of the muscle spasms and pain associated therewith.

26. The longest period of time Plaintiff has managed without a muscle spasm is two weeks.

27. When Plaintiff's muscles are in spasm, he suffers from impaired circulation to the affected area.

28. Plaintiff's wife massages the affected muscles daily in an attempt to prevent muscle spasms from developing.

29. Plaintiff underwent a lumbar facet block to relieve his muscle spasms and improve circulation to his hip which was temporarily successful.

30. Plaintiff has had a total of fifteen or sixteen surgeries, all but two of which required general anesthetic.

31. Plaintiff was referred to all subsequent treating physicians by either Dr. Sowa or Dr. Duvall, the services of both of whom were provided to Plaintiff by Defendant.

32. Plaintiff attempted to return to work for approximately two months in early 1979.

33. Plaintiff was forced to discontinue his employment due to recurrent muscle spasms and an acute condition of his right ankle.

34. Neither Dr. Sowa nor Dr. Duvall, Plaintiff's treating physicians, has ever authorized Plaintiff to return to work.

35. Defendant discontinued Plaintiff's temporary total disability benefits in December, 1981.

36. Defendant discontinued payment of medical care and treatment for Plaintiff in December, 1982.

37. Plaintiff has a prosthetic device which fits around his waist and is hinged at the hip and knee and has a collapsible heel.

38. Plaintiff can use his prosthesis without additional support only on a flat smooth surface.

39. Plaintiff's right ankle and elbow react to Plaintiff's use of crutches with the ankle swelling and sometimes losing the use of the right arm.

40. Plaintiff regularly develops boils on his amputation site and has had up to twenty-three at one time.

41. Plaintiff first developed boils on the amputation site shortly after his first release from the hospital.

42. Plaintiff has only gone from seven to eight days with no boils.

43. The boils swell and are extremely painful and require lancing.

44. Plaintiff's Navy radar skills required the use of both feet and hands.

45. Plaintiff's Navy training controlled air attacks and has no application to civilian air traffic control.

46. Plaintiff's right arm is very weak and his side to side strength is extremely limited.

47. Plaintiff is right-handed and he has the full use of his left arm.

48. Plaintiff can read and write although the significant quantities of medication he ingests do affect his faculties.

49. Plaintiff has an operator's license and can drive his father's tractor for brief periods of time.

50. Plaintiff lives on a farm adjacent to his father's farm but Plaintiff does not perform any farming tasks.

51. Plaintiff has sustained a permanent partial impairment of seventy-six per cent (76%) of the man as a whole as follows: hip, 40% of the body as a whole; right ankle, 20% of the body as a whole; right elbow, 4% of the body as a whole; cumulative effect, 2% of the body as a whole; right testicle, 10% of the body as a whole.

52. Plaintiff is unable to carry on reasonable types of employment as a result of his compensable injury.

53. Plaintiff is permanently and totally disabled as a result of his compensable injury.

54. Plaintiff's Petition to Include Additional Claims should be denied.

55. Defendant appealed to the Full Board the Order of the Single Hearing Member as to Defendant's Special Answer and Motion for Dismissal which was dismissed by the Full Board for the reason that the August 31, 1984 Order of the Single Hearing Member was not a reviewable final Order.

56. Defendant subsequently exercised its rights under I.C. 27–6–8–17 which further delayed the hearing herein for a minimum of six months.

57. Plaintiff's Petition for Bad Faith Attorney Fees should be granted.

58. Plaintiff's Petition for Attorney Fees Based on Medical Charges should be granted.

59. Defendant's oral motion to dismiss claim for medical expenses should be denied.

The single hearing member awarded to Cain bad faith attorney fees based on medical charges, and permanent total disability payments beginning from December 26, 1977 for a period of 500 weeks or until otherwise terminated, giving Jeffries credit for compensation benefits already paid. Cain also received an award for medical expenses incurred to date and all "future statutory medical expense."

Jeffries appealed from this award by Form 16. The full Industrial Board affirmed the award. An appeal taken to this court resulted in a memorandum decision remanding the case for specific findings of fact to support the board's conclusion that Cain's Form 14 application was filed within the statute of limitations. *R.L. Jeffries Trucking Co. v. Cain*, (1988), Ind.App. 528 N.E.2d 123. The court declined to consider the other issues presented in the appeal. This case on appeal today includes the additional findings as follows:

A. At the time of Plaintiff's vehicular accident Plaintiff received multiple trau-

ma to his body including fractures of the skull, right elbow and right ankle.

B.   Within a day of Plaintiff's accident Plaintiff's left leg was surgically amputated from the pelvis down.

C.   Plaintiff's fracture of sigmoid process of the right elbow occurred at the time of the accident but was not discovered or treated for some years afterwards.

D.   Plaintiff has had a total of fifteen or sixteen surgeries to treat and correct medical problems, some of which arose with the accident and others, i.e. muscle spasms and boils, developed at surgical amputation sites.

E.   Had Plaintiff suffered only traumatic amputation and fractures which completely healed without disabling or impairing sequela, Plaintiff would only have been entitled to compensation for the so-called scheduled injury. There is no evidence that Defendant ever tendered such scheduled injury benefits.

F.   Until Plaintiff's injuries reached a permanent and quiescent state, by definition, determination of permanent partial impairment or permanent total disability is not possible.

G.   Plaintiff's permanent partial impairment did not immediately arise from the accident but later developed as a result of the initial harm.

H.   At the time of the accident one would have to speculate to say that Plaintiff would be permanently and totally disabled.

I.   Defendant has failed to demonstrate by sufficient credible evidence that conditions for which Plaintiff is being compensated constituted "direct harms" such that the limitation period of I.C. 22–3–3–3 should apply.

Jeffries presents for review these six issues:

I.   Whether Jeffries is bound by the Form 12 agreement entered between its insurance carrier and Cain.

II.   Did the court err in finding Cain's claim compensable on the evidence Cain was not an employee of Jeffries.

III.   Whether the award of bad faith attorney fees is supported by the evidence.

IV.   Whether Cain's Form 14 application is barred by the statute of limitations.

V.   Whether the award for medical expenses is supported by the evidence.

VI.   Whether the finding of permanent total disability is supported by the evidence.

## I.

Jeffries entered into a Form 12 agreement with Cain which provided that Jeffries' insurance carrier would pay Cain temporary total disability payments. It was signed by Cain and a claim representative of Carriers Insurance Company. The Industrial Board had approved the agreement.

Jeffries argues that it may contest the issue of Cain's status as an employee because Jeffries was not a party to the Form 12 agreement, and Jeffries should not be charged with its insurance carrier's "unauthorized admission of liability."

An agreement between parties to pay compensation benefits, once approved by the Board, acts as an admission of liability, and is binding on the parties. *Indiana University Hospitals v. Carter* (1983), Ind. App., 456 N.E.2d 1051; *Home Packing & Ice Co. v. Cahill* (1919), 71 Ind.App. 245, 123 N.E. 415. An award resting on an agreement ought not to be set aside for the mere purpose of permitting the employer to re-examine the merits of his confession of liability. *State v. Puckett* (1988), Ind. App., 531 N.E.2d 518.

We have not had an occasion in Indiana to address the issue of whether a Form 12 agreement signed by an employer's insurance carrier is binding on the employer in the absence of mistake, fraud or duress. However, that issue was squarely before the Georgia appellate court in *Tuck v. Fidelity & Casualty Company of New York* (1974), 131 Ga.App. 807, 207 S.E.2d 210. In that case, the court held that the insurer is considered to be the alter ego of its insured, and the decision was bolstered further by citing Georgia's statutory definition

of "employer" as including the employer's insurer. Code Ann. § 114–101. Indiana has an identical provision at IND. CODE 22–3–6–1.

We hold that Jeffries may not escape the binding force and effect of the Form 12 agreement by disclaiming it was a party to the board-approved agreement. Although Jeffries claims not to have approved or sanctioned the agreement of its carrier, the record supports an inference that Jeffries was aware of the very basic facts: that Cain was severely injured while driving a truck leased by Jeffries, that he had made a claim for compensation, and that Carriers was paying temporary disability and medical payments to Cain. Jeffries admits on appeal that it knew Carriers was paying the claim, but Jeffries did nothing because it was not paying the claim out of its own pocket. Appellant's brief, page 18. The evidence in favor of Jeffries' position supports an inference only that Jeffries did not directly authorize payment of the claim. Jeffries has not and cannot contend that it has demonstrated mistake, fraud or duress in Carrier's acceptance of the claim.

Jeffries also attempts to challenge Cain's employee status in spite of the Form 12 agreement, by claiming that Jeffries is not attempting to vitiate that agreement; instead, payments under that agreement have "expired" and had been "fully paid" before Jeffries became involved. This argument is unpersuasive given the rule that a party to the agreement admits liability for workmen's compensation by entering the board-approved agreement. The agreement was not fixed as to a definite time. This litigation ensued as a result of Cain's filing of a Form 14 modification of temporary total disability payments. Although Carrier had stopped paying under the agreement, it was still in effect. Moreover, this case is not like *Fort Wayne Public Library v. Kintanar* (1977), 173 Ind.App. 269, 363 N.E.2d 1034. In that case, the court distinguished *Home Packing, supra* because it involved a Form 14 application for modification. The applicant in *Fort Wayne* had filed a Form 9 application for an original award following the Form 12 agreement, and the Board had

treated the application as one for an original award; consequently, the agreement did not act as an admission of liability and the employer could contest liability. *Fort Wayne, supra.*

The award here was treated as a modification of the parties' agreement, Jeffries was a party to the agreement because it was insurance carrier's alter ego, and accordingly, Jeffries may not re-examine the merits of its confession of liability.

## II.

Because the Form 12 agreement was a confession of liability, and Jeffries does not claim that the agreement was obtained by mistake, fraud or duress, then we must answer Jeffries' next issue, whether the court erred in finding Cain's claim compensable although Cain was not an employee, in the negative.

## III.

The board awarded bad faith attorney fees to Cain under IND. CODE 22–3–4–12. In part, that section provides:

> ... whenever the industrial board shall determine upon hearing of a claim that the employer has acted in bad faith in adjusting and settling said award, or whenever the industrial board shall determine upon hearing of a claim that the employer has not pursued the settlement of said claim with diligence, then the board shall, if compensation be awarded, fix the amount of the claimant's attorney's fees and such attorney fees shall be paid to the attorney and shall not be charged against the award to the claimant.

That part of the order awarding bad faith attorney fees cannot be adequately reviewed because the findings are inadequate. Absent findings or a statement reflecting the board's rationale for awarding bad faith attorney fees, we are unable to review the award. *See e.g., Jones & Laughlin Steel Corp. v. Kilburne* (1985), Ind.App., 477 N.E.2d 345, 352. Although the board's findings # 10, # 35, # 36, # 55 and # 56 describe actions Jeffries or its

carrier took in defense of the claim, mere recitation of these findings does not supply us with the board's rationale. Moreover, there is absent any finding of ultimate fact: that Jeffries had not pursued settlement of the claim with diligence or had acted in bad faith in adjusting and settling the award. I.C. 22–3–4–12. We must remand to the board for supplemental findings of fact bearing on the issue of Jeffries' bad faith.

### IV.

■ We now come to the issue on which additional findings were requested by this court. The issue is whether Cain's claim is barred because of his filing of Form 14 more than two years after the injury, but within two years from the last day for which compensation was paid under the original award (here, the agreement). The final payment date was December 7, 1981, and Cain filed his application on February 7, 1983.

In resolving this issue, our standard of review is circumscribed. We will construe the Workmen's Compensation Act liberally in favor of the employee. The board's findings of fact are conclusive. We do not reweigh evidence or judge credibility of witnesses. We will affirm if the evidence supports the award. *Coachmen Industries, Inc. v. Yoder* (1981), Ind.App., 422 N.E.2d 384.

Two primary sections in the Workmen's Compensation Act govern the limitation of claims. Jeffries relies on I.C. 22–3–3–3, limiting the right to compensation unless a claim for compensation is filed within two years after the occurrence of the accident (where death has not resulted). If the injury for which compensation benefits are sought is a direct harm, or resulting directly from the accident, the claimant would be required to file the claim within two years from the accident, under I.C. 22–3–3–3. *Id.* Cain argues I.C. 22–3–3–27 applies. That section provides for modification of an award on a change of conditions, which application must be filed within two years from the last day for which compensation was paid under the original award made either by agreement or upon hearing. If the claimant's condition was resultant rather than direct, the statute of limitations is at I.C. 22–3–3–27. *Id.*

On remand, the board submitted additional findings in support of its conclusion that Cain had timely filed his Form 14 application. Referring to additional findings C and D, we note the board found that Cain's fracture of the sigmoid process of the right elbow was not discovered or treated for some time after the accident, and the muscle spasms and boils had developed at surgical amputation sites. In addition, original findings numbered 20–29, concerning the etiology and persistence of Cain's muscle spasms, and findings numbered 40 and 41, concerning the development of boils on the amputation site, support the conclusion that Cain's *permanent disability* was not a direct result of the accident, but resulted from the disabling amputation.

It is not clear from the findings whether the board considered Cain's recurring boils and spasms to have caused impairment, i.e. leading to loss of some bodily function. *Perez v. United States Steel Corp.* (1977), 172 Ind.App. 242, 359 N.E.2d 925. With reference to finding number 51 on the degree of impairment, it is difficult to see how the board could have considered those serious medical problems as impairments. Rather, the board's findings support a conclusion that boils and muscle spasms developing as a result of the amputation affected his ability to work, and therefore caused in part Cain's permanent total disability. Assuming that the board's findings support only the conclusion that the above-described sequela caused Cain's disability and did not increase impairment, then we must determine whether the Board could award permanent total disability[1] more than two

---

**1.** In its award, the board ordered Jeffries to pay Cain $120 per week for 500 weeks for Cain's permanent total disability, although Cain's Form 14 alleged total disability *and* permanent partial impairment. Where the work-related accident does not result in permanent total disability, compensation for permanent partial impairment constitutes the award. *White v. Woolery Stone Co., Inc.* (1979), 181 Ind.App. 532, 396 N.E.2d 137, 139. In Cain's case, where perma-

years from the date of the accident when the disability results from the original injury.

The cases which have examined and distinguished the limitations statutes generally have proceeded from the assumption that following the original award for temporary disability, the claimant has filed a modification application for compensation for the claimant's permanent partial impairment. Thus, in the words of the court in *Tom's Chevrolet Sales v. Curtis* (1958), 128 Ind.App. 201, 147 N.E.2d 571:

> if said award [for 20% permanent partial impairment] is to be sustained, there must be substantial evidence in the record tending to prove that the appellee's present permanent partial impairment ... is the end result of his disability and not the immediate effect of the accident ...

*Id.* at 574.

Similarly, in *Coachmen, supra,* the court, quoting *Pettiford v. United Department Stores* (1935), 100 Ind.App. 471, 196 N.E. 342, stated the distinction between direct and resulting harms in terms of impairment:

> If an *impairment* ... occurs at the time of the accident, and if the award of compensation is based upon disability alone then it is obvious that a right of action still lies for the impairment, which may be prosecuted at any time within 2 years after the accident [under IC 22–3–3–3].... If, however, the *impairment* does not directly flow from the accident but is resultant at a later time, then if there be an award for the disability the cause of action for the *resultant impairment* must be commenced within one year [now two years] from the termination of the period of disability as fixed in the award for the reason that [IC 22–3–3–27] controls as to the time to bring such action. Such resultant *impairment* in the case last supposed amounts to a *change of conditions* as

contemplated in [IC 22–3–3–27]. (Emphasis on "impairment" supplied.)

196 N.E. at 345.

In spite of these holdings suggesting that I.C. 22–3–3–27 controls when an *impairment* does not directly flow from the accident, we are convinced that a resultant *disability* also invokes I.C. 22–3–3–27. The statute governing modifications gives the Board continuing jurisdiction to modify an award on account of a change in conditions. I.C. 22–3–3–27. Form 14, the application for review of an award, includes among the reasons for review upon change of conditions, that the disability of the employee has recurred, increased, diminished, or ended since the date of the original award. It is entirely consistent with the humanitarian purposes of the act to construe section 27 to mean that Cain's increased disability resulting from the loss of his leg at the hip, is resultant, and therefore section 27 would apply. We hold that the board's findings and conclusions are supported by the evidence. Cain's lingering medical problems which resulted in his permanent total disability were not a direct result of the accident, but resulted from the condition on which the original disability was based. Therefore, the filing of Form 14 within two years of the last temporary disability payment, was timely.

### V.

▮ Jeffries challenges the award for medical expenses because it was not supported by any evidence of the bills themselves from which the board could judge their necessity and reasonableness.

Jeffries has not presented any authority in support of his contention that Cain's application for medical expenses should have been dismissed because no bills had been "authenticated" at the hearing. The board denied Jeffries' motion to dismiss after hearing argument from counsel acknowledging that the usual procedure in compensation cases involving a large number of medical bills is for the responsible employer to demand a second hearing on

nent total disability was found in addition to permanent partial impairment, the Board fash-

ioned its award as one for the permanent total disability alone.

the propriety of any remaining disputed bills. Jeffries has neglected to identify to the board and to this court what medical charges he opposes, and apparently counsel for Jeffries has most of the medical charges documented in the form of Cain's answers to interrogatories.

We do not believe the lack of evidence on specific medical expenses warrants reversal of the board's award.

### VI.

Lastly, Jeffries takes issue with the board's conclusion that Cain is permanently, totally disabled. Jeffries contends that the record supports only the conclusion that Cain is impaired. We are bound by the same standard of review we alluded to earlier: when reviewing a decision of the Industrial Board, the court of appeals is required to disregard all evidence which is unfavorable to findings of the board and consider only those facts and those reasonable inferences which support the findings. The award of the board will be affirmed on appeal unless it is not supported by competent evidence. If the board reaches a legitimate conclusion from the evidentiary facts, the appellate court cannot disturb that conclusion although it might prefer another conclusion equally legitimate. *Kerchner v. Kingsley Furniture Co., Inc.* (1985), Ind.App., 478 N.E.2d 74.

Permanent total disability benefits are awarded when an employee cannot carry on reasonable types of employment. *Id.* The board's factual findings on this issue find support in the record: that Cain suffers debilitating muscle spasms which spread into his back, neck and head; that spasms are only partly controlled by oral medication; that if uncontrolled, they require Cain to seek medical attention and possibly hospitalization. In addition, the board found that Cain's attempt to return to a desk job for two months in 1979 was not successful because of the spasms and the acute condition of his right ankle. Neither of Cain's treating physicians has authorized Cain's return to work. Cain had only limited success using his prosthesis. He has gone only 7–8 days without painful

boils at the amputation site, which have numbered up to twenty-three at one time. The medications he ingests adversely affect his faculties. Although Cain lives on a farm, he does not perform any farming tasks.

This evidence does not simply show Cain was incapable of driving a truck, the kind of work he had previously performed. Rather, it was also adequate to support the board's conclusion that Cain is unable to carry on reasonable types of employment due to his compensable injury.

We affirm the award of the board as to permanent total disability payments, medicals, and attorney fees based on medical charges. We remand for specific findings of fact to support its award of bad faith attorney fees.

BAKER and MILLER, JJ., concur.