Randall **PERKINS**, Appellant–Plaintiff,

v.

**JAYCO**, Appellee–Defendant.

No. 93A02–0812–EX–1155.

Court of Appeals of Indiana.

May 14, 2009.

Douglas A. Mulvaney, Stutsman & Mulvaney, Elkhart, IN, Attorney for Appellant.

Thomas F. Cohen, Hunt Suedhoff Kalamaros, South Bend, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Randall Perkins appeals from an order of the Full Indiana Worker's Compensation Board ("Board") denying his application for adjustment of claim. Perkins raises three issues, which we consolidate and restate as whether the Board erred when it denied his application for adjustment of claim. We remand.

The relevant facts follow. On December 5, 2003, Perkins, while employed by Jayco, Inc., sustained a work-related accident to his right knee and mid-back. The accident "was accepted as a compensable work-related accident," and Jayco provided "all statutory" temporary total disability compensation and medical expenses. Appellant's Appendix at 8. On April 20, 2004, Perkins was found to be at maximum medical improvement by Dr. Gregory A. Peyer, an orthopedic surgeon. On July 26, 2004, Perkins was found to be at maximum medical improvement by his primary treating physician, Dr. Joan K. Szynal. On October 25, 2004, Perkins was found to be at maximum medical improvement by Dr. Michael J. Hartman, an orthopedic surgeon. On October 29, 2004, after a three or four week exercise program, Perkins was found to be at maximum medical improvement by Dr. Jonathan R. Javors, the Board's independent medical examination doctor. Dr. David Beatty later treated Perkins and found that Perkins "is at maximum medical improvement, but [that Perkins] will need continuing treatment on an intermittent basis for the rest of his life." Appellant's Confidential Appendix at 31. Specifically, Dr. Beatty believed that "[t]he best we can do is to use medicine that makes sense to decrease his pain enough so he can lead a full life as best he can, i.e. work with restrictions, and to use an occasional epidural steroid injection to decrease his pain enough when he needs it." *Id.*

On February 22, 2005, Perkins filed an application for adjustment of claim requesting a hearing because Jayco refused to pay "an undisputed impairment award" and to provide additional medical treatment. Appellant's Appendix at 6. In 2007, Dr. Mark Reecer examined Perkins and agreed that Perkins was at maximum medical improvement.

On October 16, 2007, the parties filed a hearing stipulation which, in addition to a statement of the facts, indicated that Jayco had paid the 10% permanent partial impairment compensation and that "the sole issue for the Board's determination is whether [Perkins] is at maximum medical improvement or whether he needs additional medical care...." *Id.* at 9. By agreement of the parties, the Single Hearing Member entered findings of fact and conclusions of law based solely on the written submissions of the parties. The Single Hearing Member found that, according to Doctors Szynal, Hartman, Peyer, and Javors, Perkins was at maximum medical improvement, that Dr. Reecer agreed, and that Dr. Beatty "has indicated that [Perkins] is at [maximum medical improvement]." *Id.* at 22. The Single Hearing Member found that, "based on the medical reports of Dr. Szynal and Dr. Reecer, any additional medical treatment is attributable to [Perkins's] pre-existing cervical condition." *Id.* The Single Hearing Member therefore denied Perkins's request for additional medical care.

Perkins filed an application for review by the Board. In his brief to the Board, Perkins argued that "the finding of maximum medical improvement is not determi-

native of whether an injured party is entitled to additional medical treatment which is palliative and reduce[s] the amount and extent of impairment." Appellant's Supplemental Appendix at 10. Affirming the Single Hearing Member's decision, the Board adopted the findings of the Single Hearing Member with the exception of the finding that "any additional medical treatment is attributable to [Perkins's] pre-existing cervical condition," which it struck. *Id.* at 22.

■ The issue is whether the Board erred when it denied Perkins's application for adjustment of claim. The Board, as the trier of fact, has a duty to issue findings that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind. Ct.App.2008), *trans. denied.* In evaluating the Board's decision, we employ a two-tiered standard of review. *Id.* First, we review the record to determine if there is any competent evidence of probative value to support the Board's findings. *Id.* We then assess whether the findings are sufficient to support the decision. *Id.* We will not reweigh the evidence or assess witness credibility. *Id.*

■ Perkins, as the claimant, had the burden to prove a right to compensation under the Worker's Compensation Act. *Id.* As such, he appeals from a negative judgment. *Id.* When reviewing a negative judgment, we will not disturb the Board's findings of fact unless we conclude that the evidence is undisputed and leads inescapably to a contrary result, considering only the evidence that tends to support the Board's determination together with any uncontradicted adverse evidence. *Id.* The Board is not obligated to make findings demonstrating that a claimant is not entitled to benefits; rather, the Board need only determine that the claimant has

failed to prove entitlement to benefits. *Id.* While this court is not bound by the Board's interpretations of law, we should reverse only if the Board incorrectly interpreted the Worker's Compensation Act. *Id.* We will construe the Worker's Compensation Act liberally in favor of the employee. *Id.*

■ Perkins argues that the Board erred by denying his application for future medical treatment simply because he was at maximum medical improvement. He cites *Grand Lodge Free & Accepted Masons v. Jones,* 590 N.E.2d 653 (Ind.Ct.App. 1992), for the proposition that "an injured worker at [maximum medical improvement] is entitled to further medical treatment if it limits the amount and extent of impairment." Appellant's Brief at 14.

■ Jayco argues that Perkins has waived this issue because the "stipulated sole issue before the Board was whether the employee was at maximum medical improvement *or* needed additional medical care." Appellee's Brief at 4. Jayco argues that Perkins "may not change the issue on appeal from the issue which was asked to be decided by the Worker's Compensation Board." *Id.* However, the record reveals that the Single Hearing Member addressed Perkins's request for additional care, and Perkins raised the issue of palliative care to the Board in his brief accompanying his application for review. *See* Appellant's Supplemental Appendix at 10–13. Moreover, for the reasons we set out below, we do not read the stipulated sole issue as excluding an award of palliative care. Thus, we will address the issue.

■■ The phrase "maximum medical improvement," also designated "quiescence" in the jargon of worker's compensation, essentially means that a worker has achieved the fullest reasonably expected recovery with respect to a work related

injury. *Cox v. Worker's Comp. Bd.*, 675 N.E.2d 1053, 1054 (Ind.1996). Once a worker's injury has stabilized to a permanent and quiescent state, temporary disability ceases, and the extent of permanent injury resulting in a degree of impairment or total disability is determined pursuant to the schedules in Ind.Code § 22–3–3–10. *Kohlman v. Ind. Univ.*, 670 N.E.2d 42, 43–44 (Ind.Ct.App.1996), *reh'g denied, trans. denied.*

Ind.Code § 22–3–3–4(c) provides in relevant part:

> After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment and within the statutory period for review in such case as provided in [Ind. Code § 22–3–3–27], the employer may continue to furnish a physician or surgeon and other medical services and supplies, and the worker's compensation board may within the statutory period for review as provided in [Ind.Code § 22–3–3–27], on a proper application of either party, require that treatment by that physician and other medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary *to limit or reduce the amount and extent of the employee's impairment.*

We clarified this provision in *Grand Lodge.*

In *Grand Lodge,* the plaintiff, employed as a dish room employee for the employer, received serious back injuries in the course of her employment when lifting a heavy crate to her cart. Her back injuries became permanent, and she suffered from permanent partial impairment of 10% to the person as a whole. The hearing judge ordered the employer to pay for the employee's use of a "TENS unit," which is a device "utilized to reduce pain." 590 N.E.2d at 654. The employer appealed the award, arguing in part that the Board could not "control payments beyond its own jurisdiction in cases of permanent partial impairment" by ordering payment for the continued use of the TENS unit. *Id.* at 655. We affirmed the Board, reasoning as follows:

> Whether medical benefits extend to palliative steps useful only to prevent pain and discomfort after all hope of cure is gone has produced a split of opinion throughout the states. *See* 2 A. Larson, *The Law of Workman's Compensation* § 61.14, 10–91 (1989). A ruling favorable to palliative measures hinges on the phrasing of the applicable worker's compensation statute. *Id.* at 10–97. Where the statute allows extended payments to effect "cure or rehabilitation" it has been held that diathermy to relieve pain, in a case of no hope of improvement or cure, could not be included in medical benefits. *LeClair v. Textron Mills, Inc.* (1950), 77 R.I. 318, 75 A.2d 309. In states where palliative methods are disallowed, the applicable statutes limit care to that which will substantially result in restoring earning power. *See Noel v. Workmen's Comp. App. Bd.,* (1982), 70 Pa.Cmwlth. 567, 453 A.2d 724.

However, our supreme court has determined even under Indiana's restrictive statute, palliative treatment methods are allowed. *Talas v. Correct Piping Co.* (1982), Ind., 435 N.E.2d 22, 27. As a result of an industrial accident, the claimant in *Talas* became a permanent quadriplegic. Although his condition remained stable, no hope of cure existed. Our supreme court reversed the Board and awarded benefits for continuing palliative care. *Id.*

Our supreme court concluded nursing care which was required to prevent the development of life-threatening diseases

could be said to limit the claimant's impairment by keeping him from 100% impairment, or death. *Id.* Thus, it allowed palliative methods under IC 22–3–3–4.

Here, as in *Talas,* the Board had discretion to award an employee continuing medical expenses for a time period which it deemed necessary to limit or reduce the amount and extent of such impairment. *Gregg v. Sun Oil Co.* (1979), Ind.App. [180 Ind.App. 379], 388 N.E.2d 588, 591.

The Board found [the employee's] pain could be reduced by use of the TENS unit and such pain reduction would limit the extent of her impairment. (R. 30). IC 22–3–3–4 allows the Board to award prospective noncurative relief to limit or reduce the amount and extent of impairment. The Board determined to the extent [the employee's] pain is reduced, the "amount" of her impairment is reduced. (R. 30–31). Such pain relief may result in [the employee's] restored ability to perform tasks and functions she may have been previously unable to perform. Thus, the Board's award to [the employee] was not contrary to law.

*Id.* at 655–656.

In the present case, the Board found that Perkins was at maximum medical improvement. Under Ind.Code § 22–3–3–4 and longstanding case law interpreting that provision, the Board could have awarded Perkins certain palliative care upon a finding that palliative care would reduce his pain and limit the extent of his impairment. Although Perkins argued that there was need for palliative care in his brief to the Board and submitted evidence that palliative care would reduce his pain so that he could work with restrictions, the Board made no findings on this issue. The Board has a duty to issue findings that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Triplett,* 893 N.E.2d at 1116. Accordingly, we remand to the Board with instructions that it consider the arguments and any evidence relating to the issue of palliative care and enter findings and conclusions thereon.

For the foregoing reasons, we remand for further findings in light of this opinion.

Remanded.

CRONE, J., and BRADFORD, J., concur.