Yvette **ALBRIGHT**, Appellant–
Plaintiff,

v.

**FOUR WINDS INTERNATIONAL**,
Appellee–Defendant.

No. 93A02–1010–EX–1324.

Court of Appeals of Indiana.

June 13, 2011.

Rehearing Denied October 21, 2011.

Douglas A. Mulvaney, Elkhart, IN, Attorney for Appellant.

James E. O'Gallagher, Kopka, Pinkus, Dolin & Eads, LLC, Crown Point, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Yvette Albright appeals the decision of the full Worker's Compensation Board (the "Board") affirming the decision of a single hearing member, who had concluded that Albright's employer, Four Winds International ("Four Winds"), is not responsible

for providing prescription Cymbalta to Albright. Albright presents the following issues for review:

1. Whether the Board abused its discretion when it allowed evidence to be submitted to the Board that had not been before the single hearing member.

2. Whether the Board erred when it denied Albright's Application for Adjustment of Claim.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Albright was employed by Four Winds to wire recreational vehicles. In performing her duties, Albright lay on a creeper and worked overhead. In 2005 she developed neck pain and hand numbness and was subsequently diagnosed with a right C7–T1 herniated disc with right C8 radiculopathy. To treat the condition, Dr. Robert A. Yount performed a discectomy and cervical fusion on January 11, 2006. On June 20, 2006, Dr. Yount gave Albright an 18% permanent partial impairment of the body as a whole. He also noted that she had some "persistent weakness in her hand and some dysesthetic pain." Appellant's App. at 73.

Based on Albright's injury, on December 19, 2006, Albright and Four Winds entered into an Agreement to Compensation of Employee and Employer ("Agreement") "in regards to compensation for the injury sustained by [Albright.]"[1] Appellee's App. at 5. The Agreement lists "[c]ervical herniation" as the nature of the injury. *Id.* Also pursuant to the Agreement, Four Winds accepted Albright's 18% whole person impairment rating and compensated her $25,000.

On January 15, 2007, Albright saw her primary care physician, Dr. Elizabeth Weston. In her notes regarding "history of present illness," Dr. Weston stated that it had been "years since [Albright] ha[d] had a physical exam or a Pap smear[,]" that she had not yet had a mammogram, and that she "recently underwent spinal surgery but [was] otherwise in good health." Appellant's App. at 51. Under "assessment" Dr. Weston listed "1. health maintenance[;] 2. normal pelvic exam[;] 3. *paresthesias* [;[2]] 4. tobacco use[; and] 5. hematuria." *Id.* 51–52 (emphasis added). And under "plan" the doctor stated, in relevant part: "Recommended increasing Cymbalta from 30 to 60 mg. She was given samples today. I told her the higher doses should control the paresthesias much better. We could also consider using Lyrica for that in the future."[3] *Id.* at 52.

In May 2007, Dr. Weston wrote on a prescription pad that Albright "might need Cymbalta (or Lyrica or other similar meds for paresthesias) for the next 20+ years." *Id.* at 52A. On October 11, Dr. Weston examined Albright "for followup of her paresthesias" and noted: "She has been on Cymbalta which has recently been in-

---

1. Albright did not include a copy of the Agreement in her Appellant's Appendix. And we note that the copy of the Agreement included in the Appellee's Appendix is not signed.

2. "Paresthesia" is defined as "a sensation of pricking, tingling, or creeping on the skin having no objective cause and usually associated with injury or irritation of a sensory nerve or nerve root." Webster's Third New International Dictionary Unabridged 1241 (2002).

3. Dr. Weston's January 15, 2007, notation is the earliest reference to Cymbalta in the record on appeal.

creased to 60 mg b.i.d.[4] She had been sleeping well at night with this medication but still has significant pain during the day. This increase already seems to be helping. She still does a lot of her activities left-handed due to weakness that will be permanent in the right hand." *Id.* at 53. Dr. Weston's plan at the conclusion of that exam was to "[c]ontinue Cymbalta 60 mg b.i.d. If she has no side effects but does not have significant decrease of her symptoms, then we will increase to 90 mg b.i.d." *Id.*

On May 18, 2008, Albright had an office visit with Dr. Weston. Dr. Weston's notes indicate that Albright was there

> for follow up of her anxiety and depression. She is doing very well on Cymbalta 60 mg [b.i.d.]. She is still having some slight fatigue. She has a history of elevated glucose, but denies any polydipsia, polyuria, or polyphagia. She is having her menstrual cycle occur every 17 days with bleeding for 5–7 days. She has had this now for the past 2 months. She is due for a Pap smear. She is uncertain of when her mom went through menopause.

*Id.* at 55. Under "assessment," Dr. Weston listed menometrorrhagia, anxiety and depression, and fatigue.

On July 18, 2008, Albright filed an Application for Adjustment of Claim ("Claim"). The Claim lists that her injury arose from "[r]epetitive work [that] resulted in a disc herniation which required surgery," and she requested a hearing "[t]o finalize settlement of future medical expense issues." Appellee's App. at 3. As part of an independent medical review for Four Winds, Dr. David S. Poder examined Albright's medical records in January 2009. Based on that review Dr. Poder issued a written report, which provides in relevant part:

> 1. Based on a review of the medical records provided, is the proposed treatment consisting of the medication Cymbalta 60 mg twice a day appropriate and medically necessary for this diagnosis and clinical findings? Yes or no? Please explain. If so, for how long?

> Determination: Yes. Based on a review of the medical records provided, the proposed treatment consisting of the medication Cymbalta 60 mg twice a day is appropriate and medically necessary for this diagnosis and clinical findings for two months.

> Rationale Supporting Determination: According to the Official Disability Guidelines, Cymbalta, also known as duloxetine, is "recommended as an option in the first line of treatment for neuropathic pain. Cymbalta is a norepinephrine and serotonin reuptake inhibitor antidepressant. It has FDA approval for the treatment of depression, generalized anxiety disorder, and for the treatment of pain related to diabetic neuropathy, with the effects found to be significant by the end of week one. A starting dose of 20 to 60 mg per day had no advantage, as had been found by increasing the dose to twice a day, except in fibromyalgia. The medication has been found to be effective for treating fibromyalgia in women with and without depression, 60 mg once or twice a day."

> Based on the medical records from Dr. Weston, it would appear that Cymbalta is helping this patient with neuropathic pain and depression associated with chronic pain. Therefore, I recommend authorization of its continued use for two

---

4. The abbreviation "b.i.d." is a dosing term that stands for "bis in die," which in Latin means twice a day.

months, at which time Dr. Weston should submit a more detailed report indicating exactly how much pain relief this patient has with Cymbalta. In addition, it would be appropriate to document the patient's improvement in quality of life and functional restoration with the use of this medication before its continued use could be considered necessary.

1a. If medically necessary, in your opinion, would the proposed treatment cure or relieve the effects of the industrial injury? If no, please explain.

Determination: Yes. In my opinion, the proposed treatment would cure or relieve the effects of the industrial injury.

Rationale Supporting Determination: The use of Cymbalta can be expected to relieve some of the patient's pain symptomatology and return her to function.

Appellant's App. at 75–76. And on February 6, 2009, Dr. Weston wrote a letter updating Albright's attorney on her condition:

I had a followup visit with [Albright] today. Cymbalta has been helping her quite a bit, improving her pain from 60 to 70 percent. Her quality of life is significant [sic] improved on the medication. She, however, still has difficulty performing daily activities which involve hand gripping. She also still has pain with pressure on the skin of the right shoulder, arm and forearm. She will only continue to have improvement in her pain from the paresthesias if she continues on Cymbalta 60 mg b.i.d. Therefore, I believe she needs to continue on this medication long-term.

Id. at 60.

On October 20, 2009, the parties filed a Stipulation of Facts, Issues and Exhibits, which provides in relevant part:

FACTS

1. In July 2005, [Albright] was employed by [Four Winds]. While employed by [Four Winds] she performed wiring work on recreational vehicles while lying on a creeper and working overhead.

2. [Albright] developed neck pain and hand numbness. She was subsequently diagnosed with a right C7–T1 herniated disc with right C8 radiculopathy. [Albright] subsequently underwent surgery to remove the herniated disc.

3. [Albright's] neck injury and subsequent surgery arose out of and in the course and scope of her employment with [Four Winds].

4. [Albright] subsequently was given a permanent partial impairment rating of 18% of the person as a whole by Dr. Robert A. Yount.

5. Elizabeth Weston, M.D. has prescribed Cymbalta for [Albright] for help in controlling bilateral upper extremity paresthesias. Cymbalta has also been approved for treatment of depression and generalized anxiety disorder.

ISSUES FOR DETERMINATION

1. Is [Four Winds] responsible for providing prescription Cymbalta to [Albright]?

2. If so, for what period or time is [Four Wind] liable?

Id. at 10–11. The Stipulation also included medical records and letters from Dr. Weston and Dr. Yount as well as Dr. Poder's report. And on March 17, 2010, the single hearing member issued his decision ("Decision") denying Albright's claim. In the Decision, the single hearing member found as follows:

1. That in July 2005, [Albright] was employed by [Four Winds]. While employed by [Four Winds], she

performed wiring work on recreational vehicles while lying on a creeper and working overhead.

2. That [Albright] developed neck pain and hand numbness. [Albright] subsequently underwent surgery to remove a herniated disk at C7–T1 on the right side with radiculopathy.

3. That this claim was accepted as compensable and [Four Winds] paid for the cervical surgery.

4. That Dr. Yount, authorized physician, provided [Albright] with a permanent partial impairment rating of 18% of the person as a whole, which was paid for by [Four Winds].

5. That the issue in this case revolves around whether [Albright] should have ongoing medications paid for by [Four Winds], specifically Cym[b]alta, which is primarily for treatment of depression and generalized anxiety disorder.

6. That, however, [Albright's] later chosen physician, not authorized by [Four Winds], was Dr. Elizabeth Weston, who prescribed Cymbalta for [Albright] to deal with her diagnosis of bilateral upper extremity paresthesias.

7. That, specifically, Dr. Weston recommended in her letter to [Albright's] attorney, on December 8, 2008, that [Albright] continue on Cymbalta, 60 milligrams twice daily, for controlling her symptoms.

8. That [Four Winds] consulted with David S. Poder, D.O., who reviewed the records and provided a report, dated January 7, 2009, which is included as an exhibit entered of evidence in this case.

9. That on January 7, 2009, Dr. Poder found the following: "Based on the medical records from Dr. Weston, it would appear that Cymbalta is helping this patient with neuropathic pain and depression associated with the chronic pain. Therefore, *I recommend authorization of its continued use for two months, at which time Dr. Weston should submit a more detailed report indicating exactly how much pain relief the patient has with Cymbalta. In addition, it would be appropriate to document the patient's improvement and quality of life and functional restoration with the use of this medication before its continued use could be considered necessary.*"

10. That Dr. Poder's report was filed with the Board by [Four Winds] with a Notice of Intent to Introduce Medical Exhibit, and file marked on January 23, 2009.

11. That *Dr. Weston's most recent report is dated February 6, 2009, which stated that Cymbalta has improved [Albright's] pain 60% to 70%.* She stated that, "I believe she needs to continue on this medication long term." Dr. Weston did not specifically respond to the findings and recommendations in Dr. Poder's report of January 7, 2009.

12. *That Dr. Weston did not submit a detailed report indicating exactly how much pain relief the patient has with Cymbalta, and documenting [Albright's] improvement, and quality of life, and functional restoration with the use of this medication, and recommendations of specific continued use, other than to state "long term."*

13. That [Albright] has essentially plateaued at MMI for the accepted portion of the work injury, and was

provided surgery and compensation at 18% impairment of the person as a whole by the authorized treating physician, Dr. Yount.

14. That while Cymbalta may help [Albright's] anxiety and general depression, [Four Winds] has not accepted [Albright's] psychological problems as compensable and no evidence is presented linking them to the cervical injury, which is the subject of this claim.

15. That [Four Winds] did not accept as compensable upper extremity complications on an extended basis, and, rather, only accepted the neck surgery as compensable for the C7 herniated disk.

16. That *[Albright] is not entitled to payment for indefinite, long-term ongoing medication of Cymbalta for depression and anxiety* when it has not been established that this medication will limit or reduce [Albright's] impairment, as required by Indiana law, nor that it is medically necessary and related to the compensable injury alleged by [Albright] of July 2005.

17. That [Four Winds] has provided medication payments out of good faith for a limited portion of time, as set forth in the recommendations of Dr. Poder in his report dated January 7, 2009, but should not have to pay for long-term or lifetime medications when this is not related to the compensable injury, but is actually related to a drug for depression and anxiety, and is not for the purposes of limiting or reducing the impairment for the cervical injury that was the compensable injury in this claim.

Appellant's App. at 7–9 (emphases added).

Albright appealed to the full Board. The parties submitted briefs and, following a hearing, the Board affirmed the single hearing member's Decision. Albright now appeals.

## DISCUSSION AND DECISION

### Issue One: Admission of Evidence

Albright first contends that the Board abused its discretion when it allowed Four Winds to submit to the Board evidence that had not been before the single hearing member. The Indiana Administrative Code governs the admission of additional evidence before the full Board, and provides:

> The facts upon review by the full board will be determined upon the evidence introduced in the original hearing, without hearing new or additional evidence, at the discretion of the industrial board. Any party desiring to introduce new or additional evidence shall file an affidavit setting forth therein the names and residences of the witnesses to be called to testify before the full board, the facts to which they will testify, or, if the new evidence be documentary, then a copy of the document proposed to be introduced setting forth good reason for failure to introduce such evidence at the original hearing. If such petition is granted, the opposing party shall have the right to introduce such additional evidence as may be necessary in rebuttal.

631 Ind. Admin. Code 1–1–15. Albright argues that only the new evidence submitted to the Board could support the Board's denial of her claim, that the admission of that evidence constituted an abuse of discretion, and, without that additional evidence, that the evidence does not support the denial of her claim.

■ But, as Four Winds points out, Albright did not raise any objection below to the admission of the additional evidence as

part of Four Winds' brief to the Board. Thus, Albright has waived this issue for review. *See Oshinski v. Northern Ind. Commuter Transp. Dist.*, 843 N.E.2d 536, 539 (Ind.Ct.App.2006) (failure to object to employer's request to amend affirmative defenses constituted a waiver of the prejudice argument asserted on appeal). As such, we cannot say that the Board abused its discretion by considering the evidence tendered by Four Winds. Albright's contention on this point must fail.

### Issue Two: Sufficiency of Evidence

■ Albright next contends that the Board erred when it denied her claim for Cymbalta. Upon review of a decision of the full Worker's Compensation Board, we are bound by the factual determinations of the Board and may only consider errors in the Board's conclusions. *Obetkovski v. Inland Steel Indus.*, 911 N.E.2d 1257, 1260 (Ind.Ct.App.2009) (citation omitted), *trans. denied.* We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a contrary result. *Id.* (citation omitted). Accordingly, on review of the Board's findings of fact, we must disregard all evidence unfavorable to the decision and may consider only the evidence and reasonable inferences drawn therefrom that support the Board's findings. *Id.* (citation omitted). When reviewing a decision made by the Board, we neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* (citation omitted). While we are not bound by the Board's legal conclusions, we will disturb the Board's conclusions only if

it incorrectly interpreted the Worker's Compensation Act. *Id.* (citation omitted). It is the claimant's burden to prove a right to compensation under the Worker's Compensation Act. *Id.* (citation omitted).

■ The parties submitted a joint stipulation to the single hearing member, and the record contains no transcript of an evidentiary hearing. Thus, the evidentiary material before the Board consisted of only the Stipulation, the parties' briefs, and the additional evidence discussed in Issue One. Courts generally favor stipulations that admit certain designated facts for the purpose of simplifying and expediting litigation. *Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 189 (Ind.Ct.App. 2009) (citation omitted), *trans. denied.* Even though proper stipulations may be conclusive and binding as to all matters contained and necessarily included therein, such stipulations will not be construed to admit facts that were obviously intended to be controverted. *Id.*

■ Albright contends that the evidence does not support the findings. In particular, she argues that the evidence does not support the findings in paragraphs 5, 11, 12, and 14 through 17 in the Decision. We consider each of these paragraphs in turn.[5]

■ In Paragraph 5, the Board found in relevant part that Cymbalta is "primarily for treatment of depression and generalized anxiety disorder." Appellant's App. at 7. This is true as far as it goes. But Albright's medical records show that Albright was taking Cymbalta at least in part for her paresthesias.[6] The Board

---

5. Four Winds also asserts a technical deficiency in Albright's Adjustment of Claim, namely, that Albright did not mark her claim as a "change of condition" to show a reopening of her claim. But Four Winds has not shown that it raised this issue below, nor has it shown by citation to legal authority that such a deficiency is fatal to Albright's claim.

As such, the issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

6. Again, the record on appeal does not show who originally prescribed Cymbalta or when or why it was first prescribed. But Dr. Weston's records show that Albright was taking the medication, at least in part, to treat her

made no finding that Cymbalta is not properly prescribed for pain generally or to treat Albright's neuropathic pain. And, as discussed in more detail below, there is no evidence in the record from which the Board could conclude that Cymbalta is used only to treat depression. And even Dr. Poder, who evaluated Albright's medical records on behalf of Four Winds, stated Cymbalta could be effective in treating neuropathic pain, that it appeared to be treating Albright's pain (per Dr. Weston's medical records), and that continued treatment for a two-month trial period was appropriate.

We next consider paragraphs 11 and 12 regarding Dr. Weston's report of February 6, 2009. In that report, which was dictated in a letter to Albright's attorney, Dr. Weston updated the attorney on Albright's condition. Albright challenges the finding in paragraph 11 that that letter was not the "detailed report" Dr. Poder had recommended and "did not specifically respond to the findings and recommendations in Dr. Poder's report of January 7, 2009." *Id.* at 8. She also disputes the more specific finding in paragraph 12 that Dr. Weston "did not submit a detailed report indicating exactly how much pain relief the patient has with Cymbalta, and documenting [Albright's] improvement, and quality of life, and functional restoration with the use of this medication, and recommendations of specific continued use, other than to state 'long term.'" *Id.*

To the extent the Board found in paragraphs 11 and 12 that Dr. Weston did not adequately indicate exactly how much pain relief Albright has experienced with Cymbalta, that finding is contradicted by the first sentence of paragraph 11. There the Board acknowledged Dr. Weston's Febru-

ary 6, 2009, report "Cymbalta has improved [Albright's] pain 60% to 70%." *Id.* That is an adequate finding regarding the reduction in Albright's pain with the use of Cymbalta. The evidence does not support the Board's finding that Dr. Weston failed to report exactly how much pain relief Albright has by taking Cymbalta.

We next consider whether the evidence supports the findings that Dr. Weston's February 6, 2009, letter fails to satisfy Dr. Poder's recommendation for a "detailed report." Again, Dr. Poder recommended that Dr. Weston "submit a more detailed report indicating exactly how much pain relief [Albright] has with Cymbalta." *Id.* at 76. As stated above, Dr. Weston adequately answered that question. Dr. Poder stated further: "[i]n addition, it would be appropriate to document [Albright's] improvement in quality of life and functional restoration with the use of [Cymbalta] before its continued use could be considered necessary." *Id.* The Board determined that Dr. Weston's February 6, 2009, letter did not adequately report on the improvement of Albright's quality of life or her functional restoration with use of the drug. We cannot agree.

In her letter, Dr. Weston reported that Cymbalta "has been helping [Albright] quite a bit, improving her pain 60 to 70 percent" and that Albright's "quality of life is significant [sic] improved on the medication." *Id.* at 60. Again, these statements show the measure of Albright's improvement on the drug and demonstrate unequivocally that her quality of life is improved on the drug. When read together, they adequately document the improvement in Albright's quality of life.

paresthesias and that the medication improved that condition sixty to seventy percent. As relevant here, Dr. Weston's references to

Albright's pain appears to refer to the paresthesias.

The report also provides that Albright "still has difficulty performing daily activities which involve hand gripping. She also still has pain with pressure on the skin of the right shoulder, arm and forearm. She will only continue to have improvement in her pain from the paresthesias if she continues on Cymbalta 60 mg b.i.d." *Id.* at 60. With those statements, Dr. Weston documented Albright's functional restoration on the drug, namely, explaining that she has limitations with hand gripping and continued pain but that those conditions are improved on the drug. And the fact that the treatment reduces Albright's pain so as to restore her to partial function can support an award in favor of Albright for continued treatment. *Montgomery Aviation, Inc. v. Hampton,* 650 N.E.2d 77, 79 (Ind.Ct.App.1995).

The Board made no finding discrediting Dr. Weston's report, finding only that it was inadequate. As stated above, Dr. Weston's February 6 letter adequately documents the improvement in quality of life and the functional restoration Albright has achieved by taking Cymbalta. The Board's determination to the contrary in paragraphs 11 and 12 is in error. Thus, the undisputed evidence leads inescapably to a result contrary to the Board's determination. *Obetkovski,* 911 N.E.2d at 1260.

Albright also challenges the findings in paragraphs 14, 15, 16, and 17. In general, those findings provide that Four Winds had "only accepted the neck surgery" or "cervical injury" as "compensable for the C7 herniated disk," that Albright had not shown either that her depression or anxiety are related to the compensable injury, or that the use of Cymbalta recommended by Dr. Weston would reduce Albright's impairment or is medically necessary. Appellant's App. at 8–9. Again, the issue was whether Four Winds is "responsible for providing prescription Cymbalta to [Al-

bright.]" Appellant's App. at 11. The Board denied a request for Cymbalta to treat depression and generalized anxiety disorder. But the Stipulation was not limited to that issue.

In the Stipulation, the parties agreed that Dr. Weston had prescribed Cymbalta "for help in controlling bilateral upper extremity paresthesias" and that Cymbalta "has also been approved for treatment of depression and generalized anxiety disorder." *Id.* But based on the stipulated reason for Dr. Weston's prescription, the first issue presented to the Board, "[i]s [Four Winds] responsible for providing prescription Cymbalta to [Albright,]" could refer to the use of that medication both for depression and anxiety and to treat paresthesias.

In sum, the question presented was whether Four Winds should be responsible for providing Cymbalta to Albright. The record shows that Cymbalta was treatment for Albright's pain, but the Board failed to address the question presented in that context. The Board made no findings crediting or discrediting Albright's diagnosis of paresthesias, determining whether her paresthesias are related to the compensable injury, or determining whether the use of Cymbalta to treat the paresthesias reduces Albright's pain or limits her impairment. Instead, the Board focused on only one possible reason for the Cymbalta prescription, the treatment of psychological issues, and did not address the efficacy of the medication in alleviating Albright's pain.

There is evidence in the record to support findings that Cymbalta was helping Albright's psychological issues as well as her paresthesias. In light of the broadly stated issue presented to the Board in the Stipulation, the Board should have separately considered each reason for the treatment in determining whether Four

Winds is responsible to provide that medication. The record, including Dr. Poder's report,[7] contains ample evidence on which to make findings on these issues.

Four Winds argues that there is no evidence to support the need for ongoing treatment. And it points to the finding that it had accepted only the neck surgery as compensable for the C7 herniated disk. But palliative treatment is compensable if the care reduces pain and limits the extent of impairment. *Perkins v. Jayco*, 905 N.E.2d 1085, 1090 (Ind.Ct.App.2009). The Board did not determine whether Albright's use of Cymbalta reduces her pain and limits the extent of her impairment.

The Board has a duty to issue findings that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Perkins*, 905 N.E.2d at 1090. But the Board made no findings on whether Cymbalta was effective in treating Albright's pain. In particular, the Board did not make findings crediting or discrediting Albright's diagnosis of paresthesias, determining whether her paresthesias are related to the compensable injury, or determining whether the use of Cymbalta to treat the paresthesias reduces Albright's pain or limits her impairment. But the undisputed evidence clearly shows that Albright suffers from paresthesias, that her paresthesias are related to her neck injury for which she had received an award, and that Dr. Weston was prescribing Cymbalta to treat Albright's neuropathic pain arising from the paresthesias. As such, the Board should have entered an award in favor of Albright regarding her request for Four Winds to provide medication to treat her paresthesias.

We must reverse the Board's decision in favor of Four Winds and remand for the Board to enter an award in favor of Albright, directing Four Winds to provide her with Cymbalta or an equivalent medication to treat her paresthesias. On remand, the Board shall determine how long Four Winds should be required to provide such medication to Albright. If the Board determines that additional information is necessary to determine the length of time Cymbalta is required for treatment, then the Board may request and consider additional evidence on that issue.

Reversed and remanded with instructions.

RILEY, J., and BARNES, J., concur.

---

7. Dr. Poder stated that Cymbalta may be used to treat diabetic neuropathy as well as psychological disorders; that the Cymbalta was "helping [Albright] with neuropathic pain and depression associated with chronic pain[;]" and that its use could be "expected to relieve some of [her] symptomatology and return her to function." Appellant's App. at 76.