**Paul G. KOVATCH, Appellant–Plaintiff,**

v.

**A.M. GENERAL, Appellee–Defendant.**

No. 93A02–9610–EX–643.

Court of Appeals of Indiana.

May 12, 1997.

Transfer Denied Sept. 19, 1997.

---

Richard J. LaSalvia, Granger, for Appellant–Plaintiff.

Eric G. Ciesielski, Edward Kalamaros & Associates, South Bend, for Appellee–Defendant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

An Application for Adjustment of Claim was filed with the Worker's Compensation Board of Indiana (the "Board") in the name of Paul G. Kovatch, deceased, against his employer, A.M. General. The hearing Board member denied the claim, and Kovatch petitioned the full Board, which also denied the claim. Kovatch now appeals.

We affirm.

### ISSUE

Kovatch presents two issues for our review which we consolidate and restate as whether Kovatch's death arose out of his employment with A.M. General.

### FACTS

Kovatch had been an A.M. General employee from September 1, 1964, until his death on April 21, 1993. Kovatch worked each day from 6:00 a.m. until 2:00 p.m. His general duties consisted of loading A.M. General trucks in the company's warehouse. He was also responsible for unlocking and locking an iron gate located within the warehouse at the close of his shift. The gate was secured by two locks, one at the bottom and one at the top of the gate.

On the afternoon of April 20, 1993, A.M. General employee Harry McClaran found Kovatch lying on his back on the concrete floor beneath the gate. He was groggy and confused, and his feet were pointing toward the gate. Kovatch did not recognize McClaran, nor could he recall what had happened to him. However, he was not bleeding and did not appear to be injured.[1] McClaran further

---

1. When McClaran found him, Kovatch had one shoe on and one shoe and sock off. He was also

observed that the gate had already been secured by the bottom lock, but that the upper lock was not yet in place.

Emergency personnel arrived soon thereafter, and Kovatch was taken to a local hospital where he died on April 21, 1993. Dr. Kurtis Kim, a board certified pathologist for the South Bend Clinic, performed an autopsy which showed that Kovatch had died from a massive skull fracture caused by blunt force trauma. Dr. Kim reported that Kovatch's injuries were consistent with injuries that result from a fall on the back of the head. Kovatch had not suffered a heart attack or stroke immediately prior to his fall.

A.M. General presented evidence before the Board that Kovatch had suffered from a pre-existing condition which caused him to fall. Kovatch's medical records indicate that Kovatch had fainted at work in 1990. That episode was related to a "syncopal attack" triggered by "severe hyponatremia." [2] Record at 181. Kovatch's records also indicate that he had suffered from vomiting, dehydration and gastroenteritis in October and November of 1992.

In denying Kovatch's claim, the full Worker's Compensation Board entered the following Findings of Fact and Conclusions of Law:

1. It is further found that the decedent Paul G. Kovatch died as a result of a blow to the head caused by a fall.

2. It is further found that the conditions existing in the area where the plaintiff fell are not found to have increased the risk of the plaintiff falling.

3. It is further found that plaintiff had pre-existing medical problems in the early 1980's that included delirium tremors [sic], pancreatitis and ulcers.

4. It is further found that on or about May 24, 1990 the plaintiff stood up at work and passed out. This condition was described as a syncopal attack attributed to severe hyponatremia by Dr. Foley.

5. It is further found that the plaintiff was off work October 15–16 and November 7–15, 1992 as a result of a condition described as vomiting and dehydration, gastroenteritis.

6. It is further found that at the time of incident in question here, the plaintiff was found with both shoes and one sock off and approximately ten feet away; that the plaintiff did not smoke in the building and yet witnesses found one of his cigarette butts burnt out on its own on the floor near plaintiff; that the plaintiff's clothes were observed to be dirty like the plaintiff had been rolling on the floor.

7. It is further found that the Board infers that the cause of the fall was the plaintiff's pre-existing medical condition and was unrelated to his employment herein.

8. It is further found that based on the facts and circumstances of this cause, the Board concludes that the plaintiff's injuries herein did not arise out of his employment with the defendant herein and, therefore, the plaintiff shall take nothing by his application herein.

Record at 42–3. Kovatch appeals from the Board's judgment.

## DISCUSSION AND DECISION

### Standard of Review

In challenging the Board's decision, Kovatch confronts a strong standard of review. *See Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73, 75 (Ind.Ct.App.1995). This court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Id.* We must disregard all evidence unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings. *Four Star Fabricators, Inc. v. Barrett*, 638 N.E.2d 792, 794 (Ind.Ct.App.1994). This court nei-

---

dirty, as if he had been rolling around in dirt. Neither party gave any explanation for Kovatch's condition.

**2.** A "syncopal attack" results in a brief lapse in consciousness; "hyponatremia" is a less than

normal amount of sodium in the blood caused by inadequate excretion of water which can lead to confusion, lethargy, muscle excitability, convulsions and coma. MOSBY'S MEDICAL DICTIONARY 776, 1516 (4th ed.1994).

ther reweighs the evidence nor judges the witness' credibility, as these are functions of the Board. *Id.* Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board. *Lona v. Sosa,* 420 N.E.2d 890, 894 (Ind.Ct.App.1981). If the Board reaches a legitimate conclusion from the evidential facts, the appellate court cannot disturb that conclusion although it might prefer another conclusion equally legitimate. *R.L. Jeffries Trucking Co. v. Cain,* 545 N.E.2d 582, 590 (Ind.Ct.App.1989) *trans. denied.*

### Arising out of Employment

■ Kovatch argues that the Board erred when it determined that his injuries and resulting death did not arise out his employment at A.M. General. Specifically, Kovatch disputes the Board's conclusion that his injuries were the result of a pre-existing condition.

■ To recover under the Worker's Compensation Act, a claimant must establish that an injury or death occurred "by accident arising out of and in the course of employment." IND. CODE § 22–3–2–2; *Rogers,* 655 N.E.2d at 75. The words "arising out of" refer to the origin or cause and are descriptive of the accident's character. *Rogers,* 655 N.E.2d at 75. Risks causing injury or death to an employee may be divided into three categories: (1) risks distinctly associated with the employment,[3] (2) risks personal to the claimant, and (3) risks of neither distinctly employment nor distinctly personal character (i.e., "neutral risks"). *K–Mart Corp. v. Novak,* 521 N.E.2d 1346, 1349, n. 1, (Ind.Ct. App.1988), *trans. denied.* Generally, the risks that fall in the first and third categories are covered by the Indiana Worker's Com-

pensation Act. *Peavler v. Mitchell & Scott Machine Co.,* 638 N.E.2d 879, 881 (Ind.Ct. App.1994), *trans. denied.* However, harms which arise in the second category, from risks personal to the claimant/employee, are universally noncompensable. *Id.*

■ Workplace falls can result from either an employment, personal or neutral risk, or from a combination thereof. Some falls clearly result from risks personal to the employee; that is, they are caused by a preexisting illness or condition, unrelated to employment. *See* 1 ARTHUR LARSON, THE LAW OF WORKER'S COMPENSATION, § 12.00 at 3–416 (1996). As a general matter, these "idiopathic" falls are not compensable. *Id.* § 12.11 at 3–423. In contrast, some falls are "unexplained" in that there is no indication of causation. *Id.* § 1031(a) at 3–104. Most jurisdictions compensate such falls, classifying them as neutral risks.[4] *Id.*

A more difficult analytical situation arises when the employment itself increases or contributes to the harm or risk suffered by an employee in an idiopathic fall.[5] Larson states:

> When an employee, solely because of a nonoccupational heart attack, epileptic fit, or fainting spell, falls and sustains a skull fracture or other injury, the question arises whether the skull fracture (as distinguished from the internal effects of the heart attack or disease, which of course are not compensable) is an injury arising out of the employment.

> The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a

---

3. As a general rule, under Indiana law, a risk is incidental to the employment if the risk involved is not one to which the public at large is subjected. *K–Mart Corp. v. Novak,* 521 N.E.2d 1346, 1348 (Ind.Ct.App.1988) *trans. denied.*

4. We note that very few falls are truly "unexplained." As long as the evidence supports a reasonable inference that the fall was the result of a personal or idiopathic condition, the fall should not be categorized as unexplained. *See* LARSON, *supra* § 10.31(b) at 3–116 to 3–117. Some jurisdictions have confused the difference

between idiopathic and unexplained falls, leading to inconsistent results. *See e.g., Nielsen v. Indus. Comm'n,* 14 Wis.2d 112, 109 N.W.2d 483 (1961).

5. An increased risk can occur in one of two ways:

> [The] employment contribution may be found either in placing the employee in a position which aggravates the effects of a fall due to the idiopathic condition, or in precipitating the effects of the condition by strain or trauma. LARSON, *supra* § 12.00 at 3–416.

fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. The currently controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment.

*Id.* § 12.11 at 3–416 to 3–423. Our supreme court has decided that question in *Pollock v. Studebaker Corp.*, 230 Ind. 622, 623–24, 105 N.E.2d 513, 513–14 (1952). In *Pollock*, the court affirmed the Board's denial of compensation to an employee for injuries that he sustained as result of an idiopathic fall onto a concrete floor. *Id.*

In the present case, the Board found that the conditions existing in the area where Kovatch fell did not increase his risk of falling and that Kovatch had several pre-existing conditions which caused his fall. The Board therefore denied Kovatch death benefits under the Act. Given our deferential standard of review, we cannot disturb the Board's conclusion that Kovatch's fall was idiopathic and, therefore, noncompensable. Kovatch's medical history, together with the circumstances under which he was found to have fallen, justify the legitimate inference that he suffered from a pre-existing condition that caused him to fall and fracture his skull. We further agree with the Board that Kovatch's employment did not increase his risk of harm. There is no evidence in the record that Kovatch fell from a significant height or that he struck a dangerous object during his fall.[6] *See, e.g., Oldham v. Industrial Comm'n*, 139 Ill.App.3d 594, 93 Ill.Dec. 868, 487 N.E.2d 693 (1985) (employee denied benefits after an idiopathic fall which resulted from "syncope" of unknown etiology). We therefore affirm the Board's order which denied Kovatch compensation under the Act.

Affirmed.

ROBERTSON and HOFFMAN, JJ., concur.

---

**6.** We reject Kovatch's contention that the hardness of the concrete floor in itself created an increased risk, thereby making his death compensable. *See Pollock*, 105 N.E.2d at 513 (claimant fell onto concrete floor); *but see, e.g., Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977) (court noted that hard surface at place of employment was a work hazard making claimant's injuries compensable). *See generally*, LARSON, *supra* § 12.14(e ) at 3–448 to 3–449.