Rebecca **ABBOTT**, Appellant–Plaintiff,

v.

**MAINSOURCE FINANCIAL GROUP**, Appellee–Defendant.

No. 93A02–0912–EX–1261.

Court of Appeals of Indiana.

Aug. 6, 2010.

Randal M. Klezmer, Klezmer Maudlin, P.C., Indianapolis, IN, Attorney for Appellant.

Robert F. Dolack, Indianapolis, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Rebecca Abbott filed an application for adjustment of claim with the Worker's Compensation Board of Indiana (the "Board") against her employer, Main-Source Financial Group ("MainSource").

In particular, Abbott sought compensation for two prescription medications she alleges she must take indefinitely as a result of her work-related injury. A Single Hearing Judge denied her claim, concluding that the evidence did not support Abbott's contention that the prescriptions were necessitated by her work-related injury. Abbott petitioned the full Board, which affirmed the Single Hearing Judge's decision following a hearing. Abbott presents two issues for our review:

1. Whether the Board erred when it concluded that Abbott is not entitled to compensation for the prospective use of two prescription medications.

2. Whether the Board erred when it concluded that MainSource did not commit bad faith in denying compensation for the prescription medications.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On December 28, 2006, Abbott was working for MainSource as a bank teller when an armed man robbed the bank. The robber held Abbott at gunpoint and threatened to kill her and others before fleeing. The extreme stress of that incident led to Abbott sustaining a heart attack, for which she underwent extensive medical treatment.

On December 29, Dr. Zachary Hodes performed a heart catheterization on Abbott, which revealed that Abbott's heart attack was caused by a condition called Takotsubo syndrome. Dr. John Bates, a cardiologist, described the syndrome as follows:

[B]asically it's a syndrome, it's something that people discover when patients would present with signs or symptoms of a heart attack, very often after a very stressful, emotional or stressful physical event. The death of a loved one, severe

exacerbation of a breathing problem. They couldn't get their breath, you know, or something like a bank robbery or something else that is a severe emotional stress. And basically it has all the signs and symptoms of a traditional heart attack but when the diagnostic evaluation is done the patient is often found to have no coronary artery disease or no blockages in the arteries that would typically cause a heart attack. And the thought is that the outpouring of catecholamines or hormones that occur with the very stressful event is actually somewhat toxic to the heart and so the heart is stunned and parts of the heart muscle don't move and it changes on EKG elevation of cardiac enzymes as you would have with a heart attack, but there's no blockage in the arteries, so that's really the distinction.

Appellant's Supp.App. at 5–6. Abbott was hospitalized for two days. After she was discharged, Abbott was prescribed Lipitor and Coreg, among other medications.

Abbott remained under the care of Dr. Bates until July 2, 2007, when a stress echocardiogram showed "normal resting left ventricular function, good exercise tolerance, and no evidence of inducible myocardial ischemia." *Id.* at 35. At that time, Dr. Bates concluded that Abbott had "recovered from the acute illness." *Id.* But, Dr. Bates noted that Abbott "is certainly at risk for a recurrence of that condition if she is again put under similar emotional stress." *Id.*

Abbott also underwent several months of psychological treatment for posttraumatic stress disorder as a result of the emotional stress she experienced during the bank robbery. Dr. Gregory Hale, Ph. D., ultimately determined that Abbott sustained a 5% permanent impairment of the whole person as a result of her psychological injuries. But both Dr. Bates and Dr.

John McLimore assessed that Abbott had sustained no impairment from a physical injury standpoint.

Pursuant to an interim agreement submitted to and approved by the Board, MainSource, through its worker's compensation provider, "paid [Abbott's] 5% whole person combined permanent partial impairment rating [.]" Appellant's App. at 5. After Abbott had attained maximum medical improvement, however, MainSource stopped paying for her prescriptions for Lipitor and Coreg, which had been prescribed for her by Dr. Bates. As Dr. Bates explained, Lipitor is a lipid-lowering drug that is usually given to patients after a heart attack to reduce the likely recurrence of a second heart attack. And Coreg is a beta blocker that protects the heart from excesses of physical activity and emotional stress. Dr. Bates explained that the Coreg is "treating [Abbott's hypertension]" and that it would protect her against a future heart attack. Appellant's Supp.App. at 10.

Abbott contacted MainSource on four occasions in October and November 2007 to request that MainSource reinstate the compensation for her prescriptions for Lipitor and Coreg, but those requests were denied. Accordingly, on February 21, 2008, Abbott filed her application for adjustment of claim with the Board and, on March 7, she filed a Petition for Bad Faith Penalties Against MainSource. Following a hearing, the Single Hearing Member found and concluded in relevant part as follows:

3. [MainSource] accepted [Abbott]'s injury as compensable under the Act.

\* \* \*

11. Upon [Abbott]'s release from treatment for her physical injuries, the physician recommended that [Abbott] take Coreg and Lipitor.

12. On August 26, 2008, Dr. Bates testified in his deposition that [Abbott] had suffered from Takotsubo syndrome but that her heart had returned to normal as of the date of his last evaluation.

13. Dr. Bates testified that [Abbott] had been placed on Coreg because she exhibited signs of exertional dyspnea, or shortness of breath upon exercise. Dr. Bates testified that Coreg can be used to treat high blood pressure. [Abbott] had shown elevated blood pressure at times during the course of her treatment with Dr. Bates.

14. Dr. Bates testified that he likes to keep heart attack patients on medications such as Coreg because the medications are protective against excesses of physical activity and emotional stress.

15. Dr. Bates testified that after a heart attack it is common to place patients on lipid lowering drugs such as Lipitor because they have been shown to reduce the likelihood of another heart attack.

16. Dr. Bates testified that based on [Abbott]'s constitution, and history of a cardiac event, she has an elevated risk for experiencing repeat cardiac events if she experiences extreme emotional distress.

17. Dr. Bates testified that the Coreg is intended to protect [Abbott] from any future stressful events and that the Lipitor is intended to keep her cholesterol low to prevent the development of artherosclerotic disease.

18. Dr. Bates testified that Lipitor has very little effect on [Abbott]'s everyday functioning. He testified that the Coreg seemed to help [Abbott]'s exertional dyspnea.

19. Dr. Bates testified that he was uncertain as to the length of time that [Abbott] might be kept on Coreg and Lipitor. He testified that a patient with [Abbott]'s history should see her physician on an annual basis.

20. [Abbott] contends that she is entitled to ongoing medication under the Act and contends that [MainSource]'s denial of same is in bad faith.

21. [MainSource] contends that [Abbott]'s ongoing need for such prescriptions is preexisting and not a direct result of the work incident. [MainSource] contends that the recommended medications would not limit or reduce the extent of [Abbott]'s permanent impairment as contemplated by the Act.

22. [Abbott] experienced a rare, severe and discrete cardiac event known as Takotsubo syndrome as the result of her employment. [Abbott]'s Takotsubo syndrome has resolved, and although [Abbott] revealed that preventive medication would be advisable, the occurrence of [Abbott]'s Takotsubo syndrome did not in itself increase her risk for further cardiac episodes or for other forms of cardiac disease.

### AWARD

1. The Worker's Compensation Act does not obligate [MainSource] to provide Coreg and Lipitor on an ongoing basis.

Appellant's App. at 9–11. Abbott appealed that decision to the full Board, which adopted the Single Hearing Member's decision. This appeal ensued.

### DISCUSSION AND DECISION

### Issue One: Compensation for Ongoing Prescription Medications

█ We have previously explained the applicable standard of review as follows:

In challenging the Board's decision, [the employee] confronts a strong standard of review. This court is bound by the

factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. We must disregard all evidence unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings. This court neither reweighs the evidence nor judges the witness' credibility, as these are functions of the Board.... If the Board reaches a legitimate conclusion from the evidential facts, the appellate court cannot disturb that conclusion although it might prefer another conclusion equally legitimate.

*Kovatch v. A.M. General,* 679 N.E.2d 940, 942–43 (Ind.Ct.App.1997) (citations omitted), *trans. denied.*

■ Abbott contends that she is entitled to compensation for her prospective use of Coreg and Lipitor "because they limit or reduce the extent of her impairment." Brief of Appellant at 10. Indiana Code Section 22–3–3–4(c) provides in relevant part:

After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment and within the statutory period for review in such case as provided in section 27 of this chapter, the employer *may* continue to furnish a physician or surgeon and other medical services and supplies, and the worker's compensation board *may* within the statutory period for review as provided in section 27 of this chapter, on a proper application of either party, require that treatment by that physician and other medical services and supplies be furnished by and on behalf of the employer *as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment.*

(Emphases added.) Thus, the statute gives the Board discretion to award prospective medical treatment as it deems necessary.

■ Here, Abbott's physician prescribed Coreg and Lipitor to treat her high blood pressure and shortness of breath, to prevent atherosclerotic disease, and to protect her heart in the event of a future heart attack. But Abbott's 5% permanent partial impairment rating was given based upon her psychological injuries, not any physical impairment. Indeed, her physicians agreed that she had "recovered from the acute cardiac event" related to the bank robbery and her heart had "returned to normal" after treatment. Appellant's Supp.App. at 8, 15. Thus, the evidence does not support Abbott's contention that the prescription medications are intended to limit or reduce the amount and extent of her impairment.

Further, the undisputed evidence shows that Abbott is "at risk for a recurrence of [a Takotsubo-induced heart attack] *if she is again put under similar emotional stress." Id.* at 35 (emphasis added). To the extent that Dr. Bates prescribed the medications to prevent a future heart attack, the evidence shows that any recurrence would be related to a discrete stressful event and would not stem from the injuries she sustained as a result of the bank robbery. Dr. Bates explained that only an "extreme" stress, like the "death of a loved one," would likely trigger another heart attack in Abbott's case. *Id.* at 16. To the extent Abbott contends that her psychological condition since the bank robbery puts her at higher risk of another heart attack, the evidence does not support that assessment. We cannot say that the Board erred when it concluded that Main-Source should not be required to pay for Abbott's prescriptions for Coreg and Lipitor prospectively.

### Issue Two: Bad Faith

Because we hold that the Board did not err when it found in favor of MainSource, Abbott cannot prevail on her claim that MainSource acted in bad faith in discontinuing benefits to pay for her prescriptions for Coreg and Lipitor.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.