**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**RICHARD R. FOX**
**STEVEN A. GUSTAFSON**
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**SHARON FUNCHEON MURPHY**
Robinson Wolenty & Young

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL SEACAT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1310-EX-910 |
| | ) | |
| GOODRICH CORPORATION, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD
The Honorable Linda Peterson Hamilton, Chairman
Cause No. C-216341

**May 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Michael Seacat ("Seacat") appeals the order of the Worker's Compensation Board ("the Board") denying his application for worker's compensation benefits.

We affirm.

## ISSUE

Whether the Board erred in denying Seacat's application for worker's compensation benefits.

## FACTS

Emily Smith ("Smith"), the human resources manager for Goodrich Corporation ("Goodrich") in Jeffersonville, Indiana, discovered that there was an increase in muscular strains among factory employees. In response, Goodrich implemented a stretching program similar to one at a Goodrich plant in Phoenix, Arizona. Employees could perform recommended stretches during voluntary sessions twice a day for five to ten minutes. Stretching usually took place inside of the factory, but they were conducted outside on warmer days. Supervisors led the morning sessions while employees who had been trained in supervised sessions led the afternoon stretch break.

On June 27, 2012, Seacat and a number of other Goodrich employees participated in the afternoon stretch break. Seacat testified that during the afternoon sessions, employees stretched for one to two minutes then engaged in other activities. His group of employees, including Jimmy Tyler ("Tyler"), whom Seacat claimed was his team leader, played hacky sack. As the employees returned to work, someone called out Seacat's name. Seacat turned around and saw a hacky sack coming toward him. Seacat stated that

2

he "went to go kick it and [his] foot planted into the ground." (Tr. 8). Seacat injured his ankle, and his coworkers called for an ambulance.

On July 16, 2012, Seacat filed a claim for worker's compensation benefits. Seacat and Goodrich agreed to submit the matter to the Board in order to determine if Seacat's injury was compensable.

On February 28, 2013, a single member of the Board conducted a hearing on Seacat's claim. There, Smith testified that the only other authorized activity during the stretch break was walking a lap around the building to warm up before starting the stretches. In addition, Smith stated that neither she nor management knew or approved of any other activities during the stretch break. Smith further stated that, contrary to Seacat's testimony, Tyler was a machine operator like Seacat and not a team leader. Finally, Smith stated that the stretch breaks were voluntary, and employees were expected to continue working if they chose not to participate.

On April 11, 2013, the hearing officer issued the following order:

\* \* \* \*

## CONCLUSIONS OF LAW

1.  Plaintiff was not in the course of his employment when his injury occurred on June 27, 2012. At the time of the accident, Plaintiff was engaged in horseplay and was injured as a result of this unauthorized activity.

2.  Defendant did not acquiesce to the activity of playing hackey [sic] sack, and therefore, the employee was no longer engaged in an activity fulfilling the duties of employment or while engaged in doing something incidental thereto.

## ORDER

3

IT IS, THEREFORE, ORDERED; by the Worker's Compensation Board of Indiana that Plaintiff shall take nothing by way of this Application.

(App. 2-4). Seacat sought review of the hearing officer's findings before the Board. However, the Board upheld the decision of the hearing officer. Seacat now appeals.

## DECISION

Seacat claims that his injury is compensable because (1) it occurred during an employer-sponsored exercise break, and (2) Goodrich acquiesced to other unauthorized activities that took place during the exercise break. Goodrich argues that Seacat was not engaged in any activity that was related to his employment when he injured his ankle.

In reviewing a challenge to a decision of the Board, this Court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Kovatch v. A.M. General*, 679 N.E.2d 940, 942 (Ind. Ct. App. 1997), *trans. denied*. We neither reweigh the evidence, nor judge the credibility of the witnesses. *Id.* at 943. "We must disregard all evidence unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings." *Id.* The burden rests with the claimant to prove a right to compensation under the Worker's Compensation Act. *Danielson v. Pratt Industries, Inc.*, 846 N.E.2d 244, 247 (Ind. Ct. App. 2006). If the Board reaches a legitimate conclusion from the evidential facts, we cannot disturb that conclusion, although we may prefer another legitimate result. *R.L. Jefferies Trucking Co. v. Cain*, 545 N.E.2d 582, 590 (Ind. Ct. App. 1989), *trans. denied*. "Although we are not

4

bound by the Board's interpretation of the law, we will reverse the Board's decision only if the Board incorrectly interpreted the [Worker's Compensation] Act." *Krause v. Indiana University-Purdue University at Indianapolis*, 866 N.E.2d 846, 851 (Ind. Ct. App. 2007), *trans. denied*.

The Worker's Compensation Act ("the Act") requires employers to provide their employees with "compensation for personal injury or death by accident arising out of and in the course of employment[.]" Ind. Code § 22-3-2-2(a). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Outlaw v. Erbich Products Co., Inc.*, 742 N.E.2d 526, 530 (Ind. Ct. App 2001), *trans. denied*. An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Id*. A claimant seeking compensation must prove both elements; neither alone is sufficient. *Conway v. Sch. City of East Chicago*, 734 N.E.2d 594, 598 (Ind. Ct. App. 2000), *trans. denied*. Here, we find that Seacat failed to prove that his injury arose out of and in the course of his employment.

Concerning whether Seacat's injury arose out of his employment, the hearing officer found to the contrary because Seacat was engaged in horseplay at the time of his accident. In response, Seacat elaborately attempts to explain why hacky sack is not horseplay, but he does not address whether there was a causal nexus between his playing hacky sack and the duties he performs as a machine operator.

5

The record supports the hearing officer's finding that Seacat's injury did not arise out of his employment. For example, Goodrich sent an email to all of its employees detailing the time and location of stretch breaks. Goodrich also posted pictures of the recommended stretches on bulletin boards in work areas. On cross examination, Seacat admitted that the stretch breaks were designed for stretching. Seacat attempted to argue that Goodrich acquiesced in other activities during the stretch break because other workers were playing basketball, and his team leader, Tyler, participated in the games of hacky sack. However, the record shows that (1) Goodrich implemented a voluntary wellness program consisting of a fitness center and a basketball court; (2) employees could take part in the wellness program after signing a waiver; (3) Seacat signed this waiver approximately two months before he was injured; (4) a waiver was not required to participate in the stretch breaks; and (5) Tyler was a machine operator, not a team leader. Finally, and perhaps most telling, Seacat testified that hacky sack did not occur during the morning stretch breaks, when supervisors were more likely to be present. As a result, the evidence supports the hearing officer's conclusion that Goodrich did not acquiesce in Seacat's game of hacky sack, and that Seacat's injury did not arise out of his employment.

Because Seacat cannot establish that his injury arose out of his employment, we need not address whether his injury was also an accident that occurred "in the course of employment." We affirm the decision of the Board.

Affirmed.

Friedlander, J., and Mathias, J., concur.

6