# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 12 2016, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James E. Ayers
Wernle Ristine & Ayers
Crawfordville, Indiana

ATTORNEY FOR APPELLEE

Kathryn A. Moll
Nation Schoening Moll, P.C.
Fortville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Luis Rivera,

*Appellant-Petitioner,*

v.

American Fibertech,

*Appellee-Respondent.*

May 12, 2016

Court of Appeals Case No.
93A02-1508-EX-1256

Appeal from the Full Worker's Compensation Board of Indiana

The Honorable Linda Peterson Hamilton, Chairman

Trial Court Cause No.
C-216416

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Claimant, Luis Rivera (Rivera), appeals from the ruling of the Worker's Compensation Board (Board) denying his application for adjustment of claim.

[2] We affirm.

## ISSUE

[3] Rivera raises one issue on appeal, which we restate as: Whether the Board erred in denying Rivera's application for adjustment of claim.

## FACTS AND PROCEDURAL HISTORY

[4] On August 10, 2011, Rivera, while employed by American Fibertech Corporation (Fibertech), sustained an injury on his right foot after stepping on a nail. Shortly thereafter, Rivera's puncture wound became infected with cellulitis, an inflammation of the skin, and from August 18, 2011, to August 21, 2011, Rivera received in-patient treatment at Franciscan St. Elizabeth Health in Crowsfordville, Indiana. After he was discharged, Rivera continued receiving authorized medical treatment from Dr. David Sullivan (Dr. Sullivan) of Greater Lafayette Foot Care. On October 20, 2011, Dr. Sullivan returned Rivera to sedentary work.

[5] In a medical report dated December 9, 2011, Dr. Sullivan noted that Rivera had returned for a cellulitis evaluation. Dr. Sullivan further noted that the cellulitis had resolved, but stated that Rivera had "persistent edema with pain" and

"Type II diabetes with neuropathy." (Appellant's App. p. 70). In addition, Dr. Sullivan stated that "due to the continued complaints of swelling, I ordered a venous Doppler. . . . [I]f the Doppler is negative for deep vein thrombosis, then the patient is released to return to work full-duty without restrictions; otherwise, he will be referred for further care of DVT." (Appellants App. p. 70).

[6] In a final report dated December 21, 2011, Dr. Sullivan noted in relevant part that "in accordance with my plan of treatment from his last visit on 12/09/2011, the patient is discharged from my care and is able to return to work. He is currently at maximum medical improvement for this problem. No permanent or partial impairment will be endured by this patient as of my last examination." (Appellant's App. p. 71).

[7] The record shows that Rivera had pre-existing Type II diabetes. On February 21, 2012, February 24, 2012, March 5, 2012, and March 23, 2012, Rivera received treatment for his diabetes at Alivio Medical Center. Rivera's physician noted that Rivera's diabetes was poorly managed—*i.e.* Rivera was not taking any medication to control his diabetes and was put on medication. Further, the record shows that in two of those visits, Rivera was treated for dermatophytosis of the foot, a fungal infection, but the report fails to stipulate which foot was infected, nor does it offer any causal link to Rivera's prior work injury.

[8] On July 19, 2012, Rivera filed an application for adjustment of claim. In October of 2013, Rivera obtained a one-time medical evaluation from Dr. Terry Mandel (Dr. Mandel), who stated that even though Rivera's foot was healed by

December 2011, Rivera continued to experience pain and swelling on his right foot and ankle. Dr. Mandel further noted that

> There was discoloration involving three-quarters of the lower right leg. There is diminished circulatory. . . . The pedal pulse was 2/4, posterior tibial pulse was diminished at 1/4. There was diminished sensation involving the lower two-thirds of the right leg.
>
> ****
> My diagnostic impressions are that of chronic right leg and foot dysfunction due to the resulting puncture wound with cellulitis and ulceration all caused by his work related injury of August 10, 2011. . . . [Rivera] was treated adequately and satisfactorily but unfortunately he does have chronic problems as outlined above. At this time, I am rendering an impairment rating. Utilizing the book "Guides to the Evaluation of Permanent Impairment", 6th Edition by the AMA, referring you to table 16-2, page 501, the patient qualifies for a 13% lower extremity impairment on the right, . . . [and] he qualifies for a 5% whole body impairment. . . . In terms of estimated cost of future treatment, he will need to use [] anti[-]inflammatory and analgesic medications. Estimated costs of these medications using generic medications would be approximately $70 a month for the remainder of his life. I also feel he may need a cane down the road to help aid in his ambulation and his steadiness as well.

(Appellant's App. p. 34).

[9] On November 20, 2014, both parties submitted joint stipulations of facts and issues to the single hearing member. Rivera's claim was heard before a single hearing member on November 20, 2014. On January 5, 2015, the single hearing member issued his findings of fact and conclusions thereon. Specifically, he found that

> 5. [Rivera] had a condition of poorly controlled diabetes mellitus with neuropathy predating the work injury of August 10, 2011, as indicated

by medical records from Franciscan St. Francis [Health] and from Alivio Medical Center.

6. Because of [Rivera's] diabetic condition, the puncture wound to his right foot developed an ulceration and cellulitis, which was treated at Franciscan St. Elizabeth Health by Dr.[] Sullivan.

7. [Fibertech] provided authorized treatment by Dr. Sullivan . . .

****

9. The work related conditions for which Dr. Sullivan provided authorized treatment, including the puncture wound, ulceration, and cellulitis, resolved by the time Dr. Sullivan made his finding of maximum medical improvement on December 21, 2011.

10. Medical records from Alivio Medical Center regarding medical treatment . . . [Rivera] obtained with regards to his diabetes between February 21, 2012 and March 23, 2012[], do not indicate any ongoing issues, problems or complaints with the puncture wound of the right foot, ulceration of the wound, or cellulitis.

11. [Rivera] was evaluated by family practitioner Dr. Mandel on one occasion on October 18, 2013.

12. The medical report by Dr. Mandel fails to indicate he was provided with or reviewed any medical records from Alivio Medical Center regarding [Rivera's] condition after he was found to be at a maximum medical improvement by Dr. Sullivan and before he saw Dr. Mandel in October of 2013.

13. Dr. Sullivan's assessment of a 0% permanent partial impairment for the puncture wound to the right foot is supported by the medical reports from Alivio Medical Center relative to medical evaluations of [] Rivera between February 21, 2012 and March 23, 2013.

14. [Rivera] is not entitled to future medical treatment with anti-inflammatory and analgesic medication or any benefits due to his allegation of the need for the use of a cane in the future, and [Rivera's] claim for such benefits under the Act are not supported by Dr. Mandel's report.

1. [Rivera] has sustained 0% permanent partial impairment.

2. [Rivera] has failed to meet his burden of providing the need for future medical treatment causally related to his work injury, or the need for palliative care to limit or reduce any claimed impairment.

(Appellant's App. p. 38).

[10] Rivera applied for a review to be conducted by the Board. On July 29, 2015, the Board entered an order adopting and affirming the single hearing member's decision.

[11] Rivera now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### A. *Standard of Review*

[12] The Indiana Worker's Compensation Act (the Act) provides compensation for personal injury or death by accident arising out of and in the course of employment. Ind. Code § 22-3-2-2. In reviewing a challenge to a decision of the Board, this court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Kovatch v. A.M. Gen.*, 679 N.E.2d 940, 942 (Ind. Ct. App. 1997), *trans. denied*. We neither reweigh the evidence, nor judge the credibility of the witnesses. *Id*. at 943. "We must disregard all evidence

unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings." *Id*. The burden rests with the claimant to prove a right to compensation under the Act. *Danielson v. Pratt Industries, Inc.*, 846 N.E.2d 244, 247 (Ind. Ct. App. 2006). If the Board reaches a legitimate conclusion from the evidentiary facts, we cannot disturb that conclusion, although we may prefer another legitimate result. *R.L. Jefferies Trucking Co. v. Cain*, 545 N.E .2d 582, 590 (Ind. Ct. App. 1989), *trans. denied*. "Although we are not bound by the Board's interpretation of the law, we will reverse the Board's decision only if the Board incorrectly interpreted the . . . Act." *Krause v. Ind. Univ.-Purdue Univ. at Indianapolis*, 866 N.E.2d 846, 851 (Ind. Ct. App. 2007), *trans. denied*.

[13] The main issues to be decided by the single hearing member, and later the Board, were (1) the amount and extent of permanent partial impairment for Rivera's work related injury; and (2) Rivera's entitlement to future medical treatment for his work-related injury.

## I. *Permanent Partial Impairment*

[14] With regard to the amount and extent of permanent partial impairment, Rivera presented a one-time evaluation conducted by Dr. Mandel in October of 2013. In that report, Dr. Mandel stated that Rivera's work-related puncture wound qualified him for a 13% percent lower extremity impairment on the right, and a 5% whole body impairment. Dr. Mandel also assessed Rivera's monthly cost of pain medication at $70. In addition, Rivera submitted medical records from

Alivio Medical Center suggestive of him receiving treatment on at least four separate occasions.

[15] Fibertech, in turn, presented Dr. Sullivan's final medical report dated December 21, 2011, indicating that Rivera's foot was healed and that no permanent partial impairment had been borne as a result of the work injury. Additionally, Fibertech presented Dr. Sullivan's report dated January 20, 2014, regarding Rivera's permanent partial impairment rating. The report stated:

1) I treated [Rivera] . . . for a very slow healing ulcer secondary to a puncture wound from a nail that he sustained at work on August 10, 2011. He had delayed healing of this wound due to diabetic issues as well as non-compliance with my recommendations of staying off of foot. His family stated that he was not doing a very good job at staying in his wheelchair when he was in his home. Eventually[,] the wound was healed by his appointment on December 14, 2011. He still had some swelling and redness. X-rays were normal on that date.

2) He continued to have redness and swelling over the course of the next 4-8 weeks. Prior to discharge we sent him for venous Doppler to rule out deep vein thrombosis which apparently showed such. I have not seen the patient after this study was performed as he was discharged from my care.

3) In regard to his pre-existing diabetic issues must be taken into account as well as poor compliance and poor control of his diabetes. If he was not a diabetic, it is difficult to state for sure but most likely he would have had much easier healing and resolution of this problem. Therefore, I still believe that 0% [permanent partial impairment] rating is appropriate.

4) When I last addressed [] Rivera's issues[,] it was actually December 9, 2011. Your letter states that I last evaluated him on

December 21, 2011[,] but that is the date of the letter I sent to you at that time when I stated that he had no permanent or partial impairment and was at maximum medical improvement for the problem for which I still agree other than ongoing care for his diabetes. I do not see the need for any ongoing treatment for this particular injury.

(Appellant's App. p. 15).

[16]  The Act enables the Board to award treatment, services, and supplies as necessary to limit or reduce the amount and extent of an employee's impairment. I.C. § 22-3-3-4(c). Impairment means an injured employee's loss of physical function. *Talas v. Correct Piping Co.*, 435 N.E.2d 22, 26 (Ind. 1982).

[17]  In December 2011, Dr. Sullivan rendered a 0% permanent partial impairment rating and indicated that Rivera was at a maximum medical improvement. The record shows that between February 2012 and March 2012, Rivera visited Alivio Medical Center four times. Rivera's chief complaints and treatment were associated with his diabetes. Notably, in two of those visits, there was a notation of him having a fungus infection to one foot, but the report is unclear as to which foot was infected or if the infection was related to his 2011 work injury. In October 2013, almost two years after Rivera's work injury, Dr. Mandel's evaluation revealed that even though Rivera's foot was healed as of December 2011, his impression was that Rivera suffered from "chronic right leg and foot dysfunction" due to his former work injury. (Appellant's App. p. 34). As such, Dr. Mandel rendered a 13% lower extremity impairment on the right, and a 5% whole-person impairment. In the negative award, the single hearing

member found that the one-time medical assessment by Dr. Mandel in October 2013, almost two years after Rivera's injury, coupled with the fact that the treatment Rivera sought at Alivio Medical Center between February 2012 and March 2012 was unrelated to his work-related injury, could not trump Dr. Sullivan's evaluation of 2011 indicating that Rivera was fully healed and had suffered no impairment as a result of the work injury.

[18] Here, it was reasonable for the Board to give more weight to Dr. Sullivan's evaluation, the treating physician, than to Dr. Mandel's one-time evaluation conducted two years after Rivera's work injury. Because there was evidence to support the Board's decision, we are without authority to reverse.

## II. *Future Medical Treatment*

[19] Next, we turn to the issue of whether Rivera is entitled to future medical treatment. At the evidentiary hearing, Rivera stated that pain persisted after he was discharged from Dr. Sullivan's care in 2011. Rivera presented Dr. Mandel's medical evaluation of 2013 indicating that he continued to experience pain and swelling on his right foot and ankle. Also, Dr. Mandel stated that he had a 13% lower right impairment and a 5% whole body impairment. Accordingly, Dr. Mandel indicated that Rivera required anti-inflammatory and analgesic medicine to manage his foot pain. Dr. Mandel estimated the cost of medication to be approximately $70 a month.

[20] Notwithstanding his claim, the single hearing member found that Rivera's claims were unsupported by the evidence. As noted in the foregoing, Dr.

Sullivan discharged Rivera from his care and treatment in December 2011, at which time, Rivera work-related injury had been resolved. More significantly, Dr. Sullivan indicated that Rivera had reached a maximum medical improvement status and had not endured any impairment as a result of his work injury. Dr. Sullivan's medical record offered in 2014 acknowledged that Rivera's slow healing of the wound and secondary cellulitis was attributed to his pre-existing diabetes, and because Rivera failed to conform to the doctor's recommendation to stay off his foot. Nevertheless, Dr. Sullivan reiterated that a 0% impairment was appropriate. In addition, during his 2012 hospital visits at Alivio Medical Center, he presented no complaints associated with his former work injury.

[21] We note that a finding of maximum medical improvement establishes that the patient has reached his maximum healing potential. *Cox v. Worker's Compensation Bd.*, 675 N.E.2d 1053, 1054 (Ind. 1996) ("This concept, also designated 'quiescence' in the jargon of worker's compensation, essentially means that the worker has achieved the fullest reasonably expected recovery."). In addition, as indicated above, impairment means an injured employee's loss of physical function. *See Talas*, 435 N.E.2d at 26.

[22] Here, we find that a finding of maximum medical improvement and the 0% impairment allows an inference that future treatment is unnecessary for Rivera. The single hearing member concluded that Rivera did not suffer any impairment due to his work-related injury, and he was at a maximum medical improvement status as of December 2011, thus requiring no future treatment.

Accordingly, the Board did not err in denying Rivera's application for adjustment of claim.

## CONCLUSION

[23] Based on the foregoing, we conclude that the Board did not err in denying Rivera's application for adjustment of claim.

[24] Affirmed.

[25] Kirsch, J. and Pyle, J. concur